UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA JULIANA G.J.,<br><br>        Petitioner,<br><br>    v.<br><br>SERGIO ALBARRAN, et al.,<br><br>        Respondents. | No. 1:26-cv-00147-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Petitioner Silvia Juliana G.J.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Colombia. (ECF No. 1 at 5.) Petitioner entered the United States with her husband and minor child at or near El Paso, Texas on April 5, 2022. (*Id.*)

---

[1]   As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

1    On April 6, 2022, the Department of Homeland Security ("DHS") issued Petitioner a Notice to
2    Appear and initiated removal proceedings against her. (*Id.*) Petitioner complied with all the
3    requirements imposed upon her, which included providing a valid address and appearing as
4    required. (*Id.*) Petitioner was never deemed a danger to the community or a flight risk. (*Id.*)
5    Petitioner has a pending application for asylum. (ECF No. 2 at 2.)

6    On December 4, 2025, U.S. Immigrations and Customs Enforcement ("ICE") arrested
7    Petitioner. (ECF No. 1 at 5.) ICE did so without claiming there were any material change in
8    circumstances that could justify Petitioner's detention, nor did DHS indicate Petitioner had
9    violated any conditions, committed any crimes, or failed to appear for any hearings. (*Id.* at 6.)

10   Petitioner has been detained at the California City Corrections Center without a bond
11   hearing for over a month. (*Id.* at 2, 6.)

12   On January 9, 2025, Petitioner filed a writ of habeas corpus. (ECF No. 1.) The same day,
13   Petitioner filed a TRO challenging the constitutionality of her detention and seeking immediate
14   release. (ECF No. 2.)

15   **II.    STANDARD OF LAW**

16   For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to
17   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary
18   relief, [3] that the balance of equities tips in her favor, and [4] that an injunction is in the public
19   interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a
20   showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d
21   1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh
22   petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger
23   showing on the balance of the hardships may support issuing a TRO even where the petitioner
24   shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows
25   that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*
26   Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were
27   raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to
28   succeed in a request for a TRO. *Id.* at 1134–35.

**III.     ANALYSIS**[2]

      A.     <u>Likelihood of Success on the Merits</u>

Petitioner has established a likelihood of success on her procedural due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner contacted Respondents on January 9, 2026, to notify them she would be filing the motion. (ECF No. 2 at 5–6.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3] Given this, the Court does not address Petitioner's other claims.

1  the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,
2  2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).). "Accordingly, a
3  noncitizen released from custody pending removal proceedings has a protected liberty interest in
4  remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL
5  2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional
6  release rises to the level of a protected liberty interest, courts have "compar[ed] the specific
7  conditional release in the case before them with the liberty interest in parole as characterized by
8  *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.
9  Cal. Sept 9, 2025).

10  Here, Petitioner gained a liberty interest in her continued freedom when ICE elected to
11  release her in 2022 after inspection. Under *Morrisey*, this release implied a promise that she
12  would not be re-detained, during the pendency of her immigration proceedings, if she abided by
13  the terms of her release. Petitioner states she has complied with all the conditions of her release,
14  she has no criminal record, and upon her detention, ICE proffered no reason for the revocation of
15  her release. (ECF No. 1 at 7.) Moreover, for approximately three years, Petitioner lived with her
16  spouse and minor child. (*Id.* at 6.) As this Court has found previously, along with many other
17  courts in this district when confronted with similar circumstances, Petitioner has a clear interest in
18  her continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)
19  (noting the Government's actions in allowing petitioner to remain in the community for over five
20  years strengthened petitioner's liberty interest).

21  As to the second step — what procedures or process is due — the Court considers three
22  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
23  erroneous deprivation of such interest through the procedures used, and the probable value, if any,
24  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including
25  the function involved and the fiscal and administrative burdens that the additional or substitute
26  procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set
27  forth below, the Court finds Petitioner has established her due process rights were likely violated.
28  First, Petitioner has a substantial private interest in remaining free from detention. As

1   discussed above, Petitioner was out of custody for approximately three years, had built a life in
2   the United States, and has complied with all the requirements imposed on her. Despite that,
3   Petitioner has now been detained for over a month without being afforded a bond hearing.
4   Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted
5   by her detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL
6   3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

7        Second, the risk of erroneous deprivation is considerable given Petitioner has not received
8   any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive
9   in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the
10  community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).
11  Petitioner represents she has no criminal history and has complied with all the requirements
12  imposed on her. (ECF No. 1 at 5.) Based on this record, the Court finds there is a serious
13  likelihood Petitioner will be erroneously deprived of her liberty interest. Moreover, without any
14  procedural safeguards to determine whether her detention was justifiable, the probative value of
15  additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

16       Finally, the Government's interest is low, and the effort and cost required to provide
17  Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-
18  TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Indeed, it would be less of a
19  fiscal and administrative burden for the Government to return Petitioner home to await a
20  determination on her asylum case than to continue to detain her. Additionally, Respondents have
21  not supplied Petitioner with any legitimate interest for detaining her. "The government has no
22  legitimate interest in detaining individuals who have been determined not to be a danger to the
23  community and whose appearance at future immigration proceedings can be reasonably ensured
24  by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994. When Petitioner entered the
25  United States, she was inspected by an immigration officer and released. Petitioner would not
26  have been released if she were deemed a flight risk or danger to the community. Moreover,
27  Petitioner asserts she has complied with all the requirements imposed on her and asserts she has
28  no criminal record.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted. Accordingly, with respect to her procedural due process claim, Petitioner has shown she is likely to succeed on the merits.

### B.   Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over a month without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's Motion for a TRO. (ECF No. 2.)

### IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Silvia Juliana G.J. from custody under the same conditions as she was released previously, prior to her December 4, 2025 detention. Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have her counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this order. Respondents shall file responsive papers by **Monday, January 19, 2026**. Petitioner may file a reply, if any, by **Wednesday, January 21, 2026**. **The parties shall indicate in their briefing whether they waive hearing**. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov. Petitioner shall file proof of such service no later than **9 a.m. on January 12, 2026.**

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

1    IT IS SO ORDERED.

2    Date: January 9, 2026

3    _____
     TROY L. NUNLEY
4    CHIEF UNITED STATES DISTRICT JUDGE